■ CHRISTIANE RUEDA, as Administratrix of the Estate of THOMAS RUEDA, Deceased, Respondent, v DAVAL VARIETY, INC., Defendant; STANLEY GINDI, Respondent, and JACKSON HEIGHTS SALES, INC., Appellant. — In a consolidated wrongful death action, defendant Jackson Heights Sales, Inc., appeals from an order of the Supreme Court, Queens County (Durante, J.), dated August 1, 1980, which denied its motion for summary judgment dismissing the action as against it, without prejudice to renewal before the trial court. Order affirmed, with $50 costs and disbursements to plaintiff. The verified complaint against defendants Jackson Heights Sales, Inc. (JH), and Stanley Gindi alleges that on February 17, 1977 Thomas Rueda was fatally shot by Gindi while lawfully on the premises of JH. It is asserted that the gun was owned, possessed and controlled by Gindi in furtherance of the business of JH and with the knowledge and consent of JH, and that JH was negligent in carelessly permitting the defendant Gindi to own, possess and control the gun on JH's premises and in furtherance of JH's business. It is further alleged that at the time and place of the fatal shooting "the defendants" carelessly and negligently handled and used the gun carried by Gindi. JH's motion for summary judgment was based on the testimony of Gindi taken at his criminal trial. In support of the motion, JH's attorney asserted that: "GINDI's testimoney [*sic*] copies of which are annexed hereto and made part hereof * * * clearly indicates that GINDI was not an employee of defendant JACKSON HEIGHTS SALES, INC. It is incumbent upon the plaintiff to show proof of employment as a pre-requisite to any lawsuit against this defendant. Since the only proof shows that GINDI was not an employee, principal or officer of the defendant JACKSON HEIGHTS SALES, INC., Summary Judgement [*sic*] should be granted dismissing the lawsuit against the defendant JACKSON HEIGHTS SALES, INC." Gindi's actual testimony at his criminal trial was: "Q Mr. Gindi, you are in business or you were in business on 74th Street, is that correct? A Yes, I was. Q Now, at about 3 PM, on February the 17th, 1977, did you have any employees in the store? A There were employees in the store. Q How many employees did you have there? A I beg your pardon? Q How many employees did you have in the store that day? A Well, at that particular time I was not the owner of the business. Q The Question, Mr. Gindi — A I had no employees, excuse me. Q At about 3 PM of February 17th, how many store employees were in the store? A I believe there were two. Q Who are they? A There was a lady and a man. Q What are their names? A Dora and George. Q And George is George Bregy, who testified last week, is that correct? A Yes. Q Were there any proprietors in the store other than yourself at the time? A I hadn't noticed, no. It looked to me not a very busy day. Q Mr. Gindi, is it fair to say that you were in charge of the store at

that time on that day? A No. Q Who was in charge? A Well, I have no idea. I got out of that business. Q Mr. Gindi, On February 17th, 1977 at 3 PM, who was running the store? A The people in the store. Q What were you doing there, Mr. Gindi? A I was waiting to see my brother. He owned the store. I got out of the business. He was running the store. Q Are you saying then that you had no managerial function in the store that day? A That's correct. I had no managerial functions in the store at all. Q You weren't a customer in the store that day? A No. Q You were just waiting for your brother then, is that correct? A Yes." Gindi thus admitted that he had in fact previously been a proprietor of the business at the site of the shooting. Accordingly, there is an issue of fact as to whether JH had entrusted Gindi with the gun and had done so negligently. Further, Gindi did not state how long prior to the shooting he had ceased to be a proprietor. Although claiming (in his defense of the criminal charges) that his brother was then the proprietor, Stanley Gindi was in fact present on the premises at the time of the shooting. We note further that no affidavit was presented from Gindi's brother or from the two employees of JH allegedly in the store at the time in question; that Thomas Rueda is dead; that his widow (the plaintiff) was not present at the time of the shooting (see CPLR 3212, subd [f], entitled "Facts unavailable to opposing party"); that plaintiff was not a party to the criminal trial and thus could not cross-examine Gindi thereat; and that the appellant's insurance company twice moved to disclaim and to withdraw its representation. In denying JH's motion, Special Term stated, *inter alia:* "[B]oth defendant Stanley Gindi and his brother Elliott Gindi, a putative principal of defendant Jackson, have been uncooperative in supplying information concerning the circumstances at issue. Consequently, this court ordered depositions to be taken 10 days before trial. Plaintiff's case will turn in large part upon facts known only to defendants or employees who have been unresponsive to discovery requests. Defendant's motion is therefore premature (CPLR 3212 [f]). Accordingly, defendant's motion is denied without prejudice to renewal before the trial court." It is manifest that knowledge of the events bearing on liability does lie exclusively with the defendants, and that even on JH's moving papers there are issues of fact and ambiguities, the resolution of which require discovery proceedings or trial. Under all the circumstances, the order of Special Term should be affirmed. Hopkins, J. P., Titone, Rabin and Weinstein, JJ., concur.